**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRISHA ACHEAMPONG**, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **JBG SMITH MANAGEMENT SERVICES, L.L.C.,** <br><br><br> Defendant. | <br><br><br><br><br> Case No.:  1:26-cv-00225-CKK |

<u>**DEFENDANT JBG SMITH MANAGEMENT SERVICES, L.L.C.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 4

    I.   Plaintiff Identifies and Applies for an Affordable Unit Through the District's Affordable Housing Website, Which Discloses Her Rent and That Utilities Are Not Included.......................................................................................................... 4

    II.  Plaintiff Signs a Lease for the Apartment Expressly Identifying the Fees and Charges at Issue. ................................................................................................... 5

    III. Plaintiff's FAC............................................................................................... 7

LEGAL STANDARD..................................................................................................... 9

ARGUMENT ............................................................................................................... 10

    I.   Plaintiff Lacks Standing for Many of Her Claims. .................................... 11

        A.    Plaintiff Lacks Standing to Bring Her Disclosure Claim Because She Did Not Suffer an Injury-in-Fact from Any Alleged Non-Disclosure. ....................................................................................... 12

        B.    Plaintiff Lacks Standing to Bring Her Lease Provision Claims Because She Did Not Suffer any Injury-in-Fact from The Fee and Indemnity Provisions. ................................................................ 13

        C.    Plaintiff Lacks Standing to Bring Claims Against Unnamed JBGS Affiliates that Manage Different Apartment Buildings. ........................... 17

    II.  Even if the Court Has Jurisdiction Over All Claims, the Court Should Stay this Case in its Entirety Because the Rent Administrator Has Primary Jurisdiction Over the Essential Underpinnings of the Parties' Dispute. ................................................. 19

    III. If the Court Declines to Stay the Case and Considers the FAC on the Merits, Plaintiff Nevertheless Fails to State a Claim Under the CPPA.......................................... 22

        A.    The Disclosure Claim Fails Under the CPPA........................................... 22

        B.    The Service Fee Claim Fails Under the CPPA. ....................................... 25

        C.    Plaintiff's Utility/Trash Claim Fail Under the CPPA. .............................. 26

        D.    The Fee Provision Claim Fails Under the CPPA..................................... 30

i

E.    The Indemnity Provisions Claim Fails Under the CPPA............................ 31

CONCLUSION................................................................................................................. 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*333 8th St., NE, LLC v. Turnkey Title, LLC*,
No. CV 23-941 (JEB), 2024 WL 5168219 (D.D.C. Dec. 19, 2024)........................................16

*Alicke v. MCI Commc'ns Corp.*,
111 F.3d 909 (D.C. Cir. 1997)................................................................................................30

*Booker v. Robert Half Int'l, Inc.*,
413 F.3d 77 (D.C. Cir. 2005)          24

*Carter v. Nahavandian*,
2019 D.C. Super. LEXIS 451 (D.C. Superior Ct. June 25, 2019) ..........................................24

*DeSilva v. Donovan*,
81 F. Supp. 3d 20 (D.D.C. 2015) .....................................................................................15, 16

*District of Columbia v. Royal*,
465 A.2d 367 (D.C. 1983) ......................................................................................................39

*Doe v. Bozzuto Mgmt. Co.*,
C.A. No. 23-3360, 2024 WL 3104550 (D.D.C. June 24, 2024) ........................................19, 20

*Drayton v. Poretsky Management, Inc.*,
462 A.2d 1115 (D.C. 1983) .........................................................................................26, 28, 29

*Easter v. Am. W. Fin.*,
381 F.3d 948 (9th Cir. 2004) ..................................................................................................25

*Florio v. Gallaudet Univ.*,
119 F.4th 67 (D.C. Cir. 2024)................................................................................................16

*Floyd v. Bank of Am. Corp.*,
70 A.3d 246 (D.C. 2013) ........................................................................................................30

*Grayson v. AT&T Corp.*,
15 A.3d 219 (D.C. 2011) .............................................................................................18, 19, 24

*Hancock v. Urban Outfitters, Inc.*,
830 F.3d 511 (D.C. Cir. 2016)....................................................................18, 19, 20, 21, 23

*Harris County Comm'rs Court v. Moore*,
420 U.S. 77 (1975)..................................................................................................................36

*Hettinger v. Bozzuto Mgmt. Co.*,
No. 23-cv-3687, 2025 WL 2029747 (D.D.C. July 21, 2025) ...................................................31

*Hirlinger v. WP Co. LLC*,
No. 23-CV-05963-AMO, 2024 WL 2941630 (N.D. Cal. June 10, 2024) .........................30, 32

*Horton et al. v. Bernstein Management Corp.*,
Case No. 2025-CAB-004502 ..........................................................................................27, 28, 29

*Jones v. Glendale Apt. Props. LLC*,
No. 24-cv-3731, 2025 WL 2659875 (D. Md. Sep. 17, 2025)...................................................23

*Little v. Dominion Transmission, Inc.*
138 F.Supp. 3d 699 (W.D. Va. 2015) ......................................................................................36

*Little v. SunTrust Bank*,
204 A.3d 1272 (D.C. 2019) .................................................................................................18, 24

*Mann v. Bahi*,
251 F. Supp. 3d 112 (D.D.C. 2017) (Bates, J.)..................................................................18, 34

*Martin v. U.S. Marshals Serv.*,
674 F. Supp. 2d 122 (D.D.C. 2009) .........................................................................................16

*Martinez v. Newsom*,
46 F.4th 965 (9th Cir. 2022) ....................................................................................................25

*Nanan v. Hines*,
No. 2024 LTB 850, 2024 WL 4697067 (D.C. Super. Ct. Nov. 6, 2024)...........................30, 31

*Parker v. John Moriarty & Assocs.*,
189 F. Supp. 3d 38 (D.D.C. 2018).............................................................................................22

*Queen v. OliveTree Mgmt. LLC*,
C.A. No. 24-3474-BAH, 2025 WL 2696234 (D. Md. Sep. 22, 2025)......................................23

*Rivers & Bryan, Inc. v. HBE Corp.*,
628 A.2d 631 (D.C. 1993) .........................................................................................................22

*Rolaff v. Farmers Ins. Co., Inc.*,
No. CIV-19-0689-J, 2020 WL 4939172 (W.D. Okla. Mar. 19, 2020) .....................................25

*Roshan v. Smith*,
615 F. Supp. 901 (D.D.C. 1985)................................................................................................25

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...................................................................................................................18

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ................................................................................................19

*Uhar & Co., Inc. v. Jacob,*
   710 F. Supp. 2d 45 (D.D.C. 2010) ........................................................................12

*Ward v. D.C. Dep't of Youth Rehab. Servs.,*
   768 F. Supp. 2d 117 (D.D.C. 2011) ......................................................................12

*Whiting v. AARP,*
   701 F. Supp. 2d 22 (D.D.C. 2010) ........................................................................32

*Williams v. Donovan,*
   219 F. Supp. 3d 167 (D.D.C. 2016) ......................................................................16

*Woodford v. Yazam Inc.,*
   No. 22-3665 (BAH), 2023 U.S. Dist. LEXIS 208032 (D.D.C. Nov. 21, 2023) ......20

*Zambali v. Shulman Rogers, P.A.,*
   No. 23-cv-03194, 2024 WL 3161590 (D. Md. June 25, 2024) ................................23

**Constitutions**

D.C. Tenant's Bill of Rights ...........................................................................................14, 38

**Statutes**

D.C. Code § 28-3904 .........................................................................................................38

D.C. Code § 28-3904(e-1) .................................................................................................39

D.C. Code § 34-922 ...........................................................................................................34

D.C. Code § 34-1553(b)(1) ...............................................................................................37

D.C. Code § 34-2202.16 ....................................................................................................36

D.C. Code § 34-2413.11 ....................................................................................................34

D.C. Code § 38-701 ...........................................................................................................34

D.C. Code § 42–3502.22(b)(1)(A) .....................................................................................30

D.C. Code § 42-3301 *et seq.* ............................................................................................37

D.C. Code § 42-3302(a) .....................................................................................................37

D.C. Code § 42-3502.03(27) ..............................................................................................26

D.C. Code § 42-3502.03(28)...........................................................................................14, 26

D.C. Code § 42-3502.04(c)...............................................................................................27, 29

D.C. Code § 42-3502.22(b)(1)(A) ................................................................................14, 26, 27

D.C. Code § 42-3505.10(b-2)(1)...................................................................................15, 32, 33

D.C. Code §§ 42.3505.10(b-2)(1) and 42.3505.22(b)(1)..........................................................28

District's Consumer Protection Procedures Act ..........................................................................8

District's Rental Housing Act .......................................................................................................8

RHA .................................................................8, 9, 10, 14, 15, 17, 26, 27, 28, 29, 33

## Other Authorities

14 D.C.M.R. § 304.3.............................................................................................10, 15, 21, 22, 38

14 D.C.M.R. § 304.4......................................................................................10, 15, 21, 22, 24, 37

14 D.C.M.R. §§ 500.1, 600.3, 801.2, and 803.2 ........................................................................15

14 D.C.M.R. § 600.3 .....................................................................................15, 26, 34, 35, 36

D.C. Mun. Regs. Title 14 §§ 600.2 & 600.4................................................................................35

D.C. Mun. Regs. Title 14, § 600.3 ..............................................................................................35

D.C. Mun. Regs. Title 14 § 601 ..................................................................................................35

D.C. Mun. Regs. Title 14 § 602 ..................................................................................................35

Defendant JBG SMITH Management Services, L.L.C. ("JBGS") respectfully moves to dismiss, or in the alternative, stay the first amended class action complaint, dated February 13, 2026 (the "FAC"), filed by Plaintiff Trisha Acheampong ("Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and the primary jurisdiction doctrine.

### INTRODUCTION

JBGS manages apartment buildings in the District of Columbia, including the Judd & Weiler building where Plaintiff has lived since April 2024. On behalf of herself and a putative class of tenants at Judd & Weiler and eight other buildings (collectively, the "Properties"), Plaintiff alleges that JBGS and its affiliates violated the District's Rental Housing Act (the "RHA") and Housing Code by: (i) charging a utility-related service fee (the "Service Fee"), which, according to Plaintiff, constitutes "rent" under the RHA and thus must be disclosed to tenants at the time they apply for a lease (the "Disclosure Claim"); (ii) requiring tenants to pay for certain utility and trash services that they use while residing at the Properties, instead of covering those costs itself (the "Utility/Trash Claim"); and (iii) including certain provisions relating to attorneys' fees and indemnification in tenants' leases (the "Lease Provision Claims"). According to Plaintiff, each of these RHA and Housing Code violations on its own creates a cognizable claim under the District's Consumer Protection Procedures Act (the "CPPA").

The principal problem for Plaintiff is that her theory of the case rests on a premise that her own allegations refute: that she was somehow misled about paying utilities and related service fees. The FAC quotes from two websites advertising open units at her apartment, both of which specifically disclosed to Plaintiff that certain utilities and related charges would be billed separately from base rent. She then chose to apply for a unit—and paid nothing to do so—before receiving a lease that spelled out the very charges she now challenges. In other words, Plaintiff

1

was told at the outset that utilities and related fees would be billed separately; she saw specific disclosures again before signing her lease; and she nonetheless agreed to the arrangement. Having been informed at every step of the process, Plaintiff now attempts to recast those same disclosed charges as "deceptive." The law does not permit such a claim, and Plaintiff cannot plausibly allege a CPPA claim under any theory for at least four reasons.

*First* and as a threshold matter, Plaintiff lacks standing to assert many of her claims. Plaintiff does not have standing to assert her Disclosure and Lease Provision Claims as she has not and cannot allege any injury-in-fact associated with those claims. As to the Disclosure Claim, Plaintiff admits in her FAC that the webpage she visited expressly informed her that the rent amount did not include utility charges, *and* that she paid no application fee—distinguishing her claim from the typical "drip pricing" claims where the plaintiff has paid some amount prior to any disclosure. Accordingly, Plaintiff has not and cannot allege any injury resulting from JBGS's alleged failure to disclose the Service Fee when she applied for her apartment. As to the Lease Provision Claims, Plaintiff similarly lacks standing because, even if the attorneys' fee and indemnity provisions at issue were unlawful as written (and they are not, as detailed below), she has not and cannot allege that the Lease Provisions were ever enforced against her, threatened to be enforce, or otherwise caused her to suffer some cognizable injury. Finally, Plaintiff purports to assert claims related to six (6) buildings that she concedes are managed by different unnamed entities. Plaintiff plainly cannot assert claims for buildings managed by entities with whom she has no relationship merely because she alleges that they are affiliates of JBGS.

*Second*, for the Service Fee and Utility/Trash Claims (and to the extent Plaintiff established standing for any of the foregoing claims), the Court should stay the merits of this action under the primary jurisdiction doctrine. As Judge Scott of the D.C. Superior Court recently held in

2

addressing similar claims brought against another property manager in the District of Columbia, the Rent Administrator has primary jurisdiction over RHA violations brought under subchapters II and V—the same subchapters under which Plaintiff's predicates for the alleged CPPA violations fall here.  Accordingly, as the Superior Court recently did, this Court should stay this action pending the Rent Administrator's determination of those threshold issues.

*Third*, to the extent the Court is inclined to address the merits of Plaintiff's claims, Plaintiff cannot state a claim under the CPPA for any of the challenged fees or expenses because she cannot plausibly allege that she was deceived in any manner.  Plaintiff acknowledges that she applied through the IZ Website, which she admits expressly stated that the fees about which she complains were not included as part of the rental price.  Moreover, each of those fees were then specifically and expressly disclosed in the lease agreement she signed.  For example, Plaintiff complains she was charged common area trash and utility fees, but she specifically agreed in the lease that she would pay a trash fee and that she "may be paying for part of the utility usage in common areas," which she agreed is "fair and reasonable."

*Fourth*, Plaintiff attempts to transform technical violations of the RHA and the D.C. Housing Code into CPPA claims.  The problem for Plaintiff is that she cannot plausibly allege any such violations.  The Lease Provisions, for example, are entirely consistent with D.C. law as written, because the attorneys' fees provision only permits a Court to award such fees (as expressly permitted by 14 D.C.M.R. § 304.4) and the indemnity provisions do not require Plaintiff to indemnify JBGS for its own negligence (which is all that's forbidden by 14 D.C.M.R. § 304.3).

Similarly, Plaintiff argues that because landlords in the District of Columbia must "furnish" certain services (like electricity and trash) to tenants, that means they must "furnish them without charge," even though the D.C. Council has declined to adopt such a rule to date.  And Plaintiff

argues that because a landlord must maintain a unit consistent with the implied warranty of habitability, that somehow means landlords must *pay for* tenants' utilities, which again is not D.C. law. Additionally, Plaintiff argues that utility bills qualify as "rent" as a matter of D.C. law. None of these theories can be squared with the provisions upon which they are based, and therefore they cannot serve as a viable predicate for Plaintiff's CPPA claims.

For all these reasons and those stated more fully herein, JBGS respectfully requests that the Court dismiss the FAC with prejudice, or in the alternative, stay the case in full.

## BACKGROUND

**I.      Plaintiff Identifies and Applies for an Affordable Unit Through the District's Affordable Housing Website, Which Discloses Her Rent and That Utilities Are Not Included.**

Plaintiff alleges that JBGS advertised affordable units through the District's Inclusionary Zoning ("IZ") Affordable Housing Program, which lists eligible units on myhousingsearch-notice.com (the "IZ Website"), and that, around February 2024, she identified an affordable unit in the Judd & Weiler building on the IZ Website. FAC ¶¶ 11, 23, 40.

According to the screenshot of the IZ Website included in the FAC, the IZ listing advertised the unit's rent of $1,560.00, disclosed "**Utilities Included: None**," and listed "**Trash Service: $20/mo.**" *Id.* at ¶ 24 (emphasis added). The FAC further includes a screenshot from the "**Online Application**" portion of the Judd & Weiler building website that specifically states that:

> The charges displayed on this website are estimates and are provided to assist with your apartment search. **These estimates do not include costs associated with utilities, such as electricity, gas, water/sewer, and/or trash**, nor do they reflect renters insurance or optional fees, including but not limited to pet fees, parking, or other elective services. Actual charges may vary based on usage, service providers, and additional fees specified in your lease agreement.

FAC ¶ 22 ("Online Application" reference in upper right corner; emphasis added).

4

Plaintiff alleges she applied for a unit at Judd & Weiler sometime between February 28 and March 3, 2024, and that her application fee was waived because she was in the IZ Program. *Id.* at ¶¶ 44–45. Plaintiff further alleges she received an email from JBGS on or about March 12, 2024—***before*** she signed her lease or, according to the FAC, paid any application or other fees—that stated she would be responsible for paying common area utility fees. *Id.* at ¶ 48.

**II.      Plaintiff Signs a Lease for the Apartment Expressly Identifying the Fees and Charges at Issue.**

Plaintiff signed a one-year lease for an apartment on March 19, 2024 "for a rent of $1,560.00." FAC ¶ 50; *see also* Ex. A, Lease, p. 1.[1] Among other things, the Lease and its addenda explicitly disclose the utility-related fees and charges Plaintiff now challenges.

For example, Paragraph 8 of the Lease, entitled "Utilities," provides that "[u]tilities for the Apartment (***and related deposits, charges, fees,*** or services) shall be paid as follows," and includes a checklist allocating responsibility by each category of utility. Ex. A, Lease ¶ 8 (emphasis added). Multiple of the utility categories—including Electricity, Water/Sewer, Cable, Phone, and Internet—are checked under the column labeled "***By You***," indicating Plaintiff accepted responsibility to pay for those utilities. *Id.* (emphasis added).

The Lease also includes a "Utility Addendum for Water, Sewer, Gas, Trash, and Electric Service." Ex. A, pp. 11-12 (the "Utility Addendum"). With respect to trash service, the Utility Addendum provides that it will be paid "by You" and specifies a "flat rate" of $20.00. Ex. A,

---

[1] This Court may properly consider the Lease on JBG's motion. *See, e.g.*, *Uhar & Co., Inc. v. Jacob*, 710 F. Supp. 2d 45, 49 n. 5 (D.D.C. 2010) ("Although the plaintiff did not attach the lease as an exhibit to the complaint, it does reference the lease in its complaint. Therefore, the court may consider the lease in resolving this motion [to dismiss]."); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (noting the court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss") (internal citations omitted).

5

Utility Addendum ¶ 1(d).  And for electric service, the Addendum similarly provides that it will be paid "**by You directly to the utility service provider**."  *Id.* ¶ 1(e).  The Addendum further provides that Plaintiff "shall pay such fees as indicated" and lists, among other things, a "Monthly Administrative Billing Fee" of $4.75 (not to exceed $6.00).  *Id.* ¶ 3.  This appears to be the "Service Fee" that Plaintiff challenges in her FAC.  *See* FAC ¶ 55.

Finally, the Utility Addendum states that:

11. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or the Lease Contract.

In addition to the monthly rent and the other Charges and Fees under this Addendum, Resident agrees to pay Landlord, together with monthly rent, for any "common area" utility charges assessed by this community as specified in Conservice document titled "How is my Conservice Utility Bill Calculated" included with this lease package.

Ex. A, Utility Addendum, ¶ 11.

In addition to agreeing as part of her Lease to pay for these utility charges and fees, including for common area utilities, Plaintiff also agreed to certain other Lease addenda.  FAC ¶¶ 91–96; 102–103; Ex. A, Additional Special Provisions Addendum (page 10 of the Lease); Community Policies Addendum (page 21 of the Lease); Lease Addendum for Remote Control, Card, or Code Access (page 24 of the Lease); Photo, Video, and Statement Release Addendum (page 30 of the Lease); and Bed Bug Addendum (beginning at page 13 of the Lease).

For example, the Additional Special Provisions Addendum to Plaintiff's Lease states:

> You will reimburse us for all court costs we incur as a result of any legal action we bring against you for breach of this Lease, ***as awarded by the court.***

Ex. A, p. 10, Additional Special Provisions Addendum (the "Fee Provision") (emphasis added).

The Community Policies, Rules and Regulations Addendum further states that:

6

Tenant(s) expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damage, of whatever nature or severity, **related to Tenant's use of the amenities** at the Community. Tenant(s) agrees to hold Owner harmless and release and waive any and all claims, allegations, actions, damages, losses, or liabilities of every type, whether or not foreseeable, that Tenant(s) may have against Owner and that are in any way related to or arise **from such use. This provision shall be enforceable to the fullest extent of the law.**

Exhibit A, p. 21 (Community Policies Addendum), § I (emphasis added).

The Community Policies, Rules and Regulations Addendum includes other, similar provisions relating to a Tenant's assumption of risks arising from his or her use of the Facilities. *See* Ex. A, Lease Addendum for Remote Control, Card, or Code Access (beginning at page 24 of the Lease, § 7); Photo, Video, and Statement Release Addendum (beginning at page 30 of the Lease, § 6); and Bed Bug Addendum (beginning at page 13 of the Lease, § 11).

Finally, the Lease includes a severability clause providing that, if any provision of the Lease is "invalid or unenforceable under applicable law," that provision will be "ineffective," without affecting the remainder of the Lease. Ex. A, Lease, ¶ 44. Plaintiff similarly signed the copy of the D.C. Tenant's Bill of Rights that JBGS provided to her, which acknowledged, among other things, that "[c]ertain lease clauses are prohibited, including waiver of landlord liability for failing to properly maintain the property." Ex. A, D.C. Tenant's Bill of Rights (p. 42), § 1 & *id.* at p. 47 (Signature Certification, line 29).

### III.    Plaintiff's FAC

Despite these clear and unambiguous disclosures in her Lease and accompanying Addenda, Plaintiff nevertheless alleges that JBGS's Service Fee, other utility charges, and certain lease provisions violate aspects of D.C. law, and are thus unlawful and actionable under the CPPA. Broadly speaking, Plaintiff's allegations fall into the following categories:

7

*First*, Plaintiff alleges that the monthly utility-related Service Fee is part of her "rent," as that term is defined in D.C. Code § 42-3502.03(28) of the RHA, and therefore it was required to be disclosed to her "at the time" she made a lease application under D.C. Code § 42-3502.22(b)(1)(A) of the RHA (the "Disclosure Claim").  *See* FAC ¶¶ 54–65, 118(a).

*Second*, Plaintiff alleges that various provisions of D.C. housing law—including 14 D.C.M.R. §§ 500.1, 600.3, 801.2, and 803.2, all of which are part of the Housing Code, and § 42-3505.10(b-2)(1) of the RHA, alongside the implied warranty of habitability—prohibit JBGS from charging tenants "any fees in connection with the provision of utilities" and related services, such as the Service Fee (the "Service Fee Claim").  FAC ¶¶ 66–79, 118(b).

*Third*, Plaintiff alleges that JBGS is required to pay for Plaintiff's use of trash services and common area utilities under the D.C. Housing Code, specifically 14 D.C.M.R. § 600.3 (the "Utility/Trash Claim").  FAC ¶¶ 80–90, 118(c).

*Fourth*, Plaintiff challenges the Fee Provision as a purported violation of the D.C. Housing Code, specifically 14 D.C.M.R. § 304.4's prohibition on mandatory shifting of attorneys' fees and court costs to tenants (the "Fee Provision Claim").  FAC ¶¶ 96–101, 118(d).

*Fifth*, Plaintiff challenges various lease provisions relating to indemnity or liability as purported violations of the D.C. Housing Code, specifically 14 D.C.M.R. § 304.3's prohibition on exculpatory clauses limiting liability for the owner's negligence (the "Indemnity Provisions Claim," and together with the Fee Provision Claim, the "Lease Provision Claims").  FAC ¶¶ 91–95, 102–105, 118, Subcount 5.

Taken together, Plaintiff alleges that each of these Claims violates D.C.'s RHA and/or Housing Code, and therefore also violates the CPPA.  Accordingly, Plaintiff purports to pursue

these theories on a putative class basis, proposing multiple sub-classes based on each Claim. *See* FAC ¶¶ 106–116.

## LEGAL STANDARD

The standards for a motion to dismiss under Fed. R. Civ. 12(b)1 and (b)(6) are well settled and familiar to the Court. Under Rule 12(b)(1), "standing is a threshold jurisdictional requirement" that must be addressed "in order to proceed to evaluate a case on the merits." *DeSilva v. Donovan*, 81 F. Supp. 3d 20, 23 (D.D.C. 2015). "[P]laintiff bears the burden of establishing that the court has [standing]", and her "factual allegations will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Florio v. Gallaudet Univ.*, 119 F.4th 67, 73 (D.C. Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Williams v. Donovan*, 219 F. Supp. 3d 167, 172 (D.D.C. 2016) (quoting *Iqbal*, 556 U.S. at 679).

However, a court need not "accept as true . . . a legal conclusion couched as a factual allegation or an inference unsupported by the facts set forth in the complaint." *333 8th St., NE, LLC v. Turnkey Title, LLC*, No. CV 23-941 (JEB), 2024 WL 5168219, at *2 (D.D.C. Dec. 19, 2024) (internal citations omitted). Instead, "more than labels and conclusions" are required. *Martin v. U.S. Marshals Serv.*, 674 F. Supp. 2d 122, 126 (D.D.C. 2009).

9

**ARGUMENT**

The FAC should be dismissed or, in the alternative, stayed for three main reasons.

*First*, Plaintiff lacks standing to bring her Disclosure or Lease Provision Claims because she does not and cannot allege that she suffered an injury-in-fact resulting from those alleged violations of the RHA or the D.C. Housing Code.  As to the Disclosure Claim, the FAC alleges that Plaintiff's application fee was waived, so she neither paid an application fee nor otherwise suffered any injury as a result of any error in the timing of the disclosures made to her.  Further, the Lease Provisions at issue were neither unlawful nor ever allegedly enforced against Plaintiff.  Accordingly, she has no injury as to those Claims either.  Nor does Plaintiff have claims to bring her claims with respect to six buildings managed by entities that are not parties to this suit and have no relation to (much less a contract with) Plaintiff.

*Second*, even if Plaintiff had alleged an injury-in-fact sufficient to support standing for her Disclosure and Lease Provision Claims, those claims and this entire case should be stayed pending a determination from the Rent Administrator as to the underlying predicate violations of the RHA and the D.C. Housing Code, on which Plaintiff's CPPA claims are exclusively based.  Indeed, the D.C. Superior Court recently reached the exact same conclusion for similar claims filed by Plaintiff's counsel, deferring to the Rent Administrator's determination in the first instance because determining what constitutes rent under the RHA, what rent was charged to Plaintiff, and whether the rent charged violated the RHA are all within the Rent Administrator's "special competence" under D.C. law.  The Court should take the same approach and defer to the Rent Administrator's primary jurisdiction over Plaintiff's largely similar claims here.

*Third*, if the Court does consider the merits of Plaintiff's claims, it should dismiss them because Plaintiff fails to state a plausible claim for relief under the CPPA.  Plaintiff does not point to any undisclosed fees and therefore cannot allege any statements or conduct that was misleading

10

or deceptive. Instead, each of her Claims relies on an erroneous interpretation of D.C. statutory and regulatory provisions that do not apply to the complained-of conduct and are belied by the express terms of the Lease and the application workflow identified in the FAC.

## I.        Plaintiff Lacks Standing for Many of Her Claims.

Standing is a threshold, jurisdictional requirement. To invoke this Court's jurisdiction, a plaintiff must plead facts showing an injury-in-fact that is "concrete and particularized", "fairly traceable to the challenged conduct," and "likely to be redressed by a favorable judicial decision." *Little v. SunTrust Bank*, 204 A.3d 1272, 1274 (D.C. 2019).

Critically, "a plaintiff [does not] automatically satisf[y] the injury-in-fact requirement [constitutionally required by Article III] whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (alterations in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Consistent with these principles, the D.C. Court of Appeals has made clear that "[a] reasonable interpretation" of the CPPA's enforcement provisions is that "a person who brings a CPPA enforcement action must have suffered or must be in imminent danger of suffering an injury-in-fact." *Grayson v. AT&T Corp.*, 15 A.3d 219, 245 (D.C. 2011); *see also Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) ("S*pokeo* held that plaintiffs must have suffered an actual (or imminent) injury that is both particularized and concrete," which is true "even in the context of a [CPPA] statutory violation"); *see also Mann v. Bahi*, 251 F. Supp. 3d 112, 119 (D.D.C. 2017) (Bates, J.) ("Although it might violate the CPPA to present misleading information even if no one was misled, a private plaintiff cannot bring a suit in federal court to enforce that claim unless he or she has suffered an injury in fact . . . [as] D.C. law is clear that the CPPA is meant to extend as far as Article III's requirements will permit—but it can go no further than that.") (citations omitted).

11

A.     Plaintiff Lacks Standing to Bring Her Disclosure Claim Because She Did Not Suffer an Injury-in-Fact from Any Alleged Non-Disclosure.

The FAC fails to allege any injury-in-fact vis-à-vis Plaintiff's Disclosure Claim because Plaintiff does not—and cannot—plead any concrete injury required by Article III flowing from the alleged failure to disclose the Service Fee "at the time" she submitted her application.

Specifically, Plaintiff alleges that she paid no money at the application stage because as an IZ applicant "her application fee was waived." FAC ¶ 45. And Plaintiff nowhere else pleads that she paid an application fee, holding fee, deposit, or other money at the time or before the alleged disclosure defect occurred. *See id.* Accordingly, Plaintiff has not pled any concrete, particularized harm arising from any alleged nondisclosure at the application stage, as she must to have standing under the CPPA. *See Grayson*, 15 A.3d at 245.

Though Plaintiff alleges a CPPA statutory violation, she must also allege a concrete, real-world injury resulting from the alleged statutory violation in order to satisfy Article III standing requirements. *Hancock* 830 F.3d at 514 (no standing for CPPA claim where plaintiff failed to "satisfy the injury-in-fact requirement of Article III" by "alleg[ing] some concrete interest that is *de facto*, real, and actually exists"). Simply stating that the CPPA was violated, without more— like Plaintiff here—does not suffice. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]").

For example, in *Doe v. Bozzuto Mgmt. Co.*, C.A. No. 23-3360, 2024 WL 3104550 (D.D.C. June 24, 2024), the plaintiff alleged that Bozzuto told her that because she was a housing subsidy recipient, she would have to fill out a paper application in-person, rather than online, and pay the security deposit by money order. However, her application was rejected, and she never actually

12

paid the security deposit via money order. *See Bozzuto*, 2024 WL 3104550, at *1. Nevertheless, she alleged that Bozzuto violated the CPPA by "misrepresent[ing] or fail[ing] to disclose that as an applicant with an income subsidy, she needed to apply in-person and pay a security deposit by money order." *Id.* at *7. Judge Kelly found that she lacked standing to pursue this CPPA claim "because she has not pleaded an injury traceable to these alleged misrepresentations or omissions." *Id.* at *8. Noting that the CPPA "can go no further" than Article III, the Court explained:

> [I]n neither her complaint nor her briefing does she allege that she was ever misled by *these* specific misrepresentations or omissions. Similarly, she does not allege that she ever paid a security deposit by money order (presumably because her application was rejected) or that she suffered any other economic harm linked to these misrepresentations or omissions.

*Id.*

Such is the case here, and "[a]lthough the CPPA prohibits any 'unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby,' plaintiff cannot bring her suit in federal court to enforce her claim absent an injury-in-fact traceable to the claimed statutory violation." *Woodford v. Yazam Inc.*, No. 22-3665 (BAH), 2023 U.S. Dist. LEXIS 208032, at *16, 20 (D.D.C. Nov. 21, 2023) ("[D]efendant's alleged misrepresentations about its compliance with [D.C. law] and its violations of such provisions, absent any allegation that plaintiff was actually misled or that she suffered injuries due to being misled by defendant's alleged [] violations, do not amount to an injury-in-fact"). Plaintiff has not and cannot do so here. This, in and of itself, is fatal to her Disclosure Claim. The Claim should be dismissed.

> B.    Plaintiff Lacks Standing to Bring Her Lease Provision Claims Because She Did Not Suffer any Injury-in-Fact from The Fee and Indemnity Provisions.

Plaintiff has similarly failed to allege she has suffered an injury-in-fact—that is a real world, cognizable harm—as a result of the Fee and Indemnity Provisions that form the basis for her Lease Provision Claims. In *Hancock*, the plaintiffs—like Plaintiff here—attempted to shoehorn an alleged technical violation of D.C. law into a CPPA class action, alleging that certain

retailers violated a D.C. statute by requiring plaintiffs (and putative class members) to provide their zip codes at the point of sale. *Hancock*, 830 F.3d at 512. However, the D.C. Circuit held that the case "[did] not get out of the starting gate" because the complaint failed to allege that plaintiffs suffered any cognizable injury as a result of the alleged violations of D.C. law. *Id.* at 512. The *Hancock* Court emphasized that plaintiff cannot merely "allege a bare procedural violation, divorced from any concrete harm," but instead must allege some "concrete interest" that is "*de facto*," "real," and "actually exist[s]." *Id.* at 514 (citing *Spokeo, Inc.*, 578 U.S. at 339). There, like here, plaintiffs "assert[ed] only a bare violation of the requirements of D.C. law in the course of their purchases" without any "concrete consequence." *Id.* Accordingly, "[b]ecause the plaintiffs ha[d] not alleged any concrete injury in fact stemming from the alleged violations of D.C. law," the court held that the complaint failed to state a basis for federal court jurisdiction and remanded with instructions to dismiss with prejudice. *Id.* at 515.

Here, the FAC is similarly devoid of any suggestion that the Plaintiff has suffered some real, concrete, and actually existing injury or harm. For starters, Plaintiff nowhere alleges that those Provisions have ever been interpreted, let alone actually enforced, in a way that would render them unlawful and in violation of the D.C. Housing Code, specifically 14 D.C.M.R. § 304.4 (for the Fee Provision Claim) and 14 D.C.M.R. § 304.3 (for the Indemnity Provisions Claim). *See generally* FAC.

Nor could she assert any injury resulting from those Lease Provisions, in large part because she misreads them. For example, as the FAC admits, the Fee Provision provides that Plaintiff will "reimburse" JBGS for "court costs" that JBGS incurs "as a result of any legal action" brought against Plaintiff for breach of the Lease "***as awarded by the court***." FAC ¶ 96; Ex. A, Additional Special Provisions Addendum (emphasis added). This is entirely consistent with 14 D.C.M.R. §

14

304.4, which specifically states that it "shall not preclude a court from assessing court or legal fees against a tenant in appropriate circumstances." 14 D.C.M.R. § 304.4. In other words, while a landlord may not "requir[e] that the tenant pay the owner's court costs or legal fees" under 14 D.C.M.R. § 304.4, a court may nevertheless award such fees and costs as an exercise of judicial discretion. *Id.* And that is all the Fee Provision provides, namely that tenants like Plaintiff agree to pay such "court costs" when "awarded by the court." The fact that the Fee Provision reiterates this truism of 14 D.C.M.R. § 304.4 does not somehow transform the Fee Provision into a violation of that provision of the Housing Code.

Similarly, Plaintiff claims that the Indemnity Provisions violate 14 D.C.M.R. § 304.3 of the D.C. Housing Code, which prohibits waiving liability for a housing provider's *own* negligence. FAC ¶¶ 91–95, 102–105. But, under D.C. law, liability waiver provisions—including the Indemnity Provisions here—are not, as a matter of law, "construed to permit an indemnitee to recover for [its] own negligence unless the court is firmly convinced" from "the face of the contract" that is the "clear" and "mutual intention of the parties." *Parker v. John Moriarty & Assocs.*, 189 F. Supp. 3d 38, 43 (D.D.C. 2018) (cleaned up). As the D.C. Court of Appeals has held, "if the alleged intention to provide this type of protection for the indemnitee is at all ambiguous, this standard is not satisfied." *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635 (D.C. 1993).

Here, nothing in the Indemnity Provisions here reflects such a "clear" and "mutual intent" to depart from the traditional interpretation of such Provisions under D.C. law, under which such provisions do ***not*** exculpate JBGS's own negligence. Nor does Plaintiff allege that JBGS has asserted otherwise or attempted to enforce the Indemnity Provisions in that manner or at all. *See* FAC. Accordingly, again, Plaintiff has not alleged—and cannot allege—any real-world

cognizable harm from the Indemnity Provisions as required by Article III sufficient to satisfy the injury-in-fact requirement. *Hancock* 830 F.3d at 514 (finding no standing for CPPA claim where plaintiff failed to "satisfy the injury-in-fact requirement of Article III" by "alleg[ing] some concrete interest that is *de facto*, real, and actually exists").

Courts have applied these principles and emphasized the distinction between mere statutory violations and actual injuries in nearly identical circumstances to those present here—where a tenant brings a putative class action (including under consumer protection statutes) challenging allegedly unlawful lease provisions that were not in fact applied to him or her. *See Jones v. Glendale Apt. Props. LLC*, No. 24-cv-3731, 2025 WL 2659875, at *4 (D. Md. Sep. 17, 2025) (dismissing tenant's claim for lack of standing in putative class action alleging an unlawful late fee provision in lease where plaintiff did not "allege a particular instance in which Defendant charged him a late fee" and thus "does not allege a concrete injury"); *Queen v. OliveTree Mgmt. LLC*, C.A. No. 24-3474-BAH, 2025 WL 2696234, at *3 (D. Md. Sep. 22, 2025) (citing *Jones*, 2025 WL 2659875, at *3) ("Queen essentially alleges a mere 'statutory violation,' which does not amount to 'concrete harm' required to establish an injury in fact. . . . Absent, at minimum, a concrete and specific allegation that OliveTree had previously enforced the allegedly unlawful provision, Queen cannot establish an injury on the ground that the provision might be imposed in the future."); *see also Zambali v. Shulman Rogers, P.A.*, No. 23-cv-03194, 2024 WL 3161590 (D. Md. June 25, 2024) (no standing where plaintiff was "essentially asking this Court to find that [defendant] injured [him] because it violated the law").

16

In short, Plaintiff's tortured attempts to plead around the express language of the Lease

Provisions cannot conjure up an injury-in-fact resulting from those Provisions. Plaintiff's Lease

Provision Claims should therefore be dismissed for lack of standing.[2]

> C.    Plaintiff Lacks Standing to Bring Claims Against Unnamed JBGS
> Affiliates that Manage Different Apartment Buildings.

JBG purports to bring claims with respect to eight buildings. However, Plaintiff's own

allegations make clear that JBG did not manage six of the right buildings:  West Half, F1rst

Residences, 1221 Van, 13 | U, The Wren, 901 W, Atlantic Plumbing (the "non-JBGS Buildings").

*See* Compl. ¶¶ 3–4 (listing apartment buildings in D.C. managed by "JBG and its affiliates" and

alleging that "[o]ut of these JBG D.C. Properties, JBG manages Judd & Weiler and The Batley.").

Plaintiff does not and cannot allege that she has ever lived in any of the non-JBG Buildings or had

any contractual relationship with the entities that do manage them. Accordingly, Plaintiff has not

---

[2]    Moreover, even if, for example, the Fee Provision was an automatic fee shifting one (and it is not), D.C. courts have interpreted 14 D.C.M.R. § 304.4 to mean that any such provisions are "void from the outset and unenforceable." *Carter v. Nahavandian*, 2019 D.C. Super. LEXIS 451, *3 (D.C. Superior Ct. June 25, 2019). Thus, even if the Fee Provision were somehow interpreted to be one that requires automatic fee shifting (and it cannot fairly be so interpreted as written, nor has it ever been enforced as such), Plaintiff still could not have suffered—and does not allege— any real world, cognizable harm from a CPPA violation sufficient to establish Article III's injury-in-fact requirement. *Little*, 204 A.3d at 1274 (quoting *Spokeo*, 578 U.S. at 341); *Grayson*, 15 A.3d at 245.

Similarly, in such a circumstance, the Lease's severability provision severs any Lease provision to the extent that such provision is "invalid or unenforceable under applicable law." Ex. A, Lease ¶ 44. D.C. courts regularly interpret such express severability clauses to exclude unlawful provisions, while preserving the rest of an agreement. *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (affirming the severance of an unenforceable and unlawful provision while upholding the rest of the agreement pursuant to an express severability clause). Accordingly, even if the Fee and Indemnity Provisions were unlawful as written (and they are not for all the reasons noted), they would merely be read out of Plaintiff's Lease pursuant to the Lease's severability clause. Even in that event, Plaintiff would not have suffered any injury in fact from those Provisions.

suffered any injury traceable to alleged practices at those buildings, and any claims or allegations relating to the non-JBG Buildings must be dismissed for lack of standing.

The fact that Plaintiff seeks to proceed on behalf of a putative class does not relieve her of the obligation to establish standing, and she cannot rely on the fact that other unnamed members of the proposed class may have been injured by the entities that manage the non-JBGS Buildings. *See, e.g.*, *Roshan v. Smith*, 615 F. Supp. 901, 905–06 (D.D.C. 1985) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41 (1976)) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (citations omitted) (noting that "named plaintiffs generally lack standing to sue defendants that have not injured them personally" and finding that plaintiffs lacked standing to sue school districts "in which they are not enrolled" or schools "which they do not attend"); *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (holding that plaintiffs lacked standing to sue defendants with which they had no relationship and reaffirming principle that "a plaintiff having a cause of action against one defendant could not represent a class with actions against defendants who had behaved similarly but had not injured the plaintiff"); *Rolaff v. Farmers Ins. Co., Inc.*, No. CIV-19-0689-J, 2020 WL 4939172, at *2 (W.D. Okla. Mar. 19, 2020) (citations omitted) ("When a representative plaintiff sues multiple defendants on behalf of a class, that representative must still have standing to pursue each claim against each defendant."). Because Plaintiff has alleged no injury arising from the non-JBG Buildings, she lacks standing to pursue claims based on alleged practices at those properties and those claims should be dismissed.

**II.    Even if the Court Has Jurisdiction Over All Claims, the Court Should Stay this Case in its Entirety Because the Rent Administrator Has Primary Jurisdiction Over the Essential Underpinnings of the Parties' Dispute.**

Even if the Court finds it has jurisdiction over all of Plaintiff's Claims (which it does not for the reasons noted above), the Court should nevertheless stay this case pending a determination by the Rent Administrator pursuant to its primary jurisdiction over Plaintiff's Claims, all of which are predicated on violations of the RHA and/or the D.C. Housing Code.

"Under the doctrine of primary jurisdiction, when a claim is originally cognizable in the courts but requires resolution of an issue within the special competence of an administrative agency, the party must first resort to the agency before he or she may sue for adjudication." *Drayton v. Poretsky Management, Inc.*, 462 A.2d 1115, 1118 (D.C. 1983).

Here, all of Plaintiff's Claims fall within the Rent Administrator's primary jurisdiction because, at bottom and as discussed in more detail in Section III below, they all turn on violations of the RHA and/or the D.C. Housing Code.

Plaintiff's Disclosure Claim turns on whether the utility-related Service Fee about which Plaintiff complains constitutes "rent" under the RHA's definition of that term in D.C. Code § 42-3502.03(28), such that it had to be disclosed to Plaintiff at the time of application under D.C. Code § 42-3502.22(b)(1)(A). *See* FAC ¶¶ 54-55. But D.C. Code § 42-3502.22(b)(1)(A) itself explicitly refers to the "disclosure form published by the Rent Administrator" in describing the requisite disclosures a housing provider must provide. D.C. Code § 42-3502.22(b)(1)(A).

Similarly, Plaintiff's Utility/Trash Claim turns on whether utilities are "related services" under the RHA's definition of that term in D.C. Code § 42-3502.03(27), and further whether 14 D.C.M.R. § 600.3 requires landlords to "furnish" such utilities without charging tenants for them. *See id.* at ¶¶ 74, 80-84.

19

These determinations fall within the Rent Administrator's primary jurisdiction under the D.C. Code, which specifically grants the Rent Administrator jurisdiction to hear rent disputes "arising under Section 42-3502.04(c) subchapters II, IV, V, VI, and IX of this chapter and title V of the [RHA]." D.C. Code § 42-3502.04(c). Indeed, this is exactly why the D.C. Superior Court recently stayed a separate case—brought by the same counsel as Plaintiff's counsel here—and asserting similar CPPA claims predicated on violations of the RHA and the Housing Code, *Horton et al. v. Bernstein Management Corp.*, Case No. 2025-CAB-004502 ("*Horton*").

In *Horton*, plaintiffs sought to certify a putative class based on ***two of the exact same claims at issue here***, namely that: (i) certain fees constituted "rent" under the RHA, which the defendant failed to disclose at the time of application in violation of D.C. Code § 42-3502.22 (b)(1)(A); and (ii) the defendant's leases contained a provision representing that the housing provider had rights or obligations that were prohibited by law. *See* Ex. B hereto, (*Horton* Complaint), ¶¶ 282-286; 308-312. And, just like here, those same claims formed the basis for the *Horton* plaintiff's CPPA claims. *See id.*

Notwithstanding that they were pleaded under the CPPA rather than the RHA, Superior Court Judge Ebony Scott found that such claims still centered on whether "defendant's air conditioning fees constituted rent" under the RHA and D.C. Housing Code. *See* Ex. C hereto (Transcript from October 30, 2025, hearing in *Horton*), p. 5:4-5. Judge Scott explained:

> [Paragraphs] 293 to 292 [of the *Horton* complaint] describes the AC fee as rent charge. And 301 through 307 describes the AC fee as rent, and then 308 through 312 also provides additional facts to support the conclusion – the plaintiff's conclusion that it's rent.
>
> And so it's very clear. It's all about rent. No matter how many cases are cited by the plaintiff or the arguments made, there's simply -- the Court has not heard a persuasive reason for why the Rent Administrator should not determine the question of rent.

> Now, plaintiffs contend that their primary -- or the primary contention rather is based on the CPPA. But in order to get to those claims, I mean, there has to be an acknowledgment by the plaintiffs, that the Court would have to decide whether the fees constitute a rent increase under the RHA.

Ex. C, pp. 27-28.

Judge Scott relied heavily on the D.C. Court of Appeals' decision in *Drayton* to stay the *Horton* case in its entirety. Ex. C, pp. 29. In *Drayton*, the Court of Appeals emphasized that the Rent Administrator should be the "preliminary resort for ascertaining and interpreting the circumstances underlying legal issues" involving rent given the "complexity of the issues" and because the Rent Administrator is "better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure questions." *Drayton*, 462 A.2d at 1119.

Similarly, in *Horton*, Judge Scott found that, because the dispute "is largely a complaint about rent" (Ex. C at 4:12-13), the Rent Administrator, given its "special competence" (Ex. C at 15:2), was best positioned to hear and dispose of the *Horton* plaintiffs' claims in the first instance. This was true even though the claims were pled as violations under the CPPA, because those claims were still, at bottom, based on predicate violations of the RHA. *See* Ex. C, pp. 25.

So too here. Plaintiff alleges that the Service Fee, the common area fees, and the trash fees—and the Disclosure Claim's allegation that JBGS failed to disclose the Service Fee at the time of the application—violate the RHA and the D.C. Housing Code, specifically D.C. Code §§ 42.3505.10(b-2)(1) and 42.3505.22(b)(1), and 14 D.C.M.R. § 600.3. *See* FAC ¶¶ 58, 76, 87, 118. Plaintiff alleges that these fees and charges constituted either "rent" or "related services" under the RHA's definitions of those terms. *See id.* at ¶¶ 59, 74. These purported violations are the predicate for the bulk of Plaintiff's Claims under the CPPA. *See id.* at ¶¶ 64, 65, 78, 90, 118.

In short, the FAC, at its core, is mainly about whether such fees can be considered "rent" or "related services" under D.C. housing law, and about whether certain disclosures of those were

21

adequate.   Just like the RHA allegations in *Horton*, the RHA claims here arise under RHA subchapters II and V, and jurisdiction for claims made under those subchapters is conferred upon the Rent Administrator under D.C. Code § 42-3502.04(c).

And just as in *Horton*, in order for the Court to evaluate Plaintiff's CPPA Claims, the Court would first have to decide what constitutes rent (including the various utility charges and fees on which Plaintiff's Claims are based), what rent was charged, and whether the rent charged violated the RHA, all of which is, as Judge Scott found in *Horton*, within the "special competence" of the Rent Administrator.  *See* Ex. C, at 15:2; *see also Drayton*, 462 A.2d at 1118.  Accordingly, those determinations are within the Rent Administrator's primary jurisdiction, and this Court should stay this case in its entirety pending the Rent Administrator's determination on these threshold issues underpinning all, or nearly all, of Plaintiff's FAC.

### III.   If the Court Declines to Stay the Case and Considers the FAC on the Merits, Plaintiff Nevertheless Fails to State a Claim Under the CPPA

Even if the Court were to look past the FAC's jurisdictional defects, Plaintiff still fails to state a plausible claim for relief for any of her claims.

### A.   The Disclosure Claim Fails Under the CPPA.

Plaintiff's Disclosure Claim fails because Plaintiff has not plausibly alleged a deceptive trade practice under the CPPA, and because such claim does not violate D.C. law.  Plaintiff alleges she applied for an IZ unit that was advertised at a base rent of $1,560.00, and claims that, "long after the initial application," JBGS demanded a monthly utility-related Service Fee be paid.  *See* FAC ¶¶ 25–28, 41–43.  According to Plaintiff, by not including these utilities within the base rent for her apartment, JBGS did not disclose the "true price" of the rent before Plaintiff applied for her apartment.  *Id*. ¶¶ 54–56, 65.

22

Courts regularly dismiss CPPA claims as a matter of law when statements, viewed in context and not in isolation, are not material statements that tend to mislead a reasonable consumer. *See*, *e.g.*, *Floyd v. Bank of Am. Corp.*, 70 A.3d 246, 256–57 (D.C. 2013); *see also Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (dismissing CPPA claim because defendant's "billing practices could not mislead a reasonable customer"); *Hirlinger v. WP Co. LLC*, No. 23-CV-05963-AMO, 2024 WL 2941630, at *6 (N.D. Cal. June 10, 2024) (dismissing CPPA claim because defendant's advertisement was "clear[] and unambiguous[]").

As a threshold issue, Plaintiff does not even attempt to allege that a reasonable consumer would somehow be misled by JBGS purportedly failing to disclose a monthly utility-related Service Fee before paying any money associated with her apartment. The FAC's description of the IZ Website—where Plaintiff viewed the apartment listing before submitting her application—includes a screenshot of that listing that prominently states, among other things, "**Utilities Included: None**" and "**Trash Service…$20/mo.**" FAC ¶ 24 (emphasis added). The FAC thus admits that the utilities or related charges were explicitly identified as being excluded from the base rent amount. *See id.* Nor is there anything misleading about prominently disclosing that utilities are not included or identifying the cost of trash service. Indeed, Plaintiff nowhere pleads any facts suggesting otherwise. *See* FAC.

Instead, Plaintiff contends that the utility-related charges are *per se* deceptive because they constitute "rent" under D.C. law and therefore must be provided when a prospective tenant applies for a unit under D.C. Code § 42–3502.22(b)(1)(A). Plaintiff's argument effectively collapses "rent" into "essentially every obligation of tenancy," which "makes little sense." *Nanan v. Hines*, No. 2024 LTB 850, 2024 WL 4697067, at *4 (D.C. Super. Ct. Nov. 6, 2024). As D.C. Superior Court Judge Edelman observed in addressing the same basic premise, "the obligation to pay utility

23

bills is properly understood as an obligation of tenancy rather than a component of rent." *Id*. at *5. Plaintiff's attempt to re-label a third-party Service Fee related to utilities as "rent" for application-stage disclosure purposes is therefore not a plausible predicate violation of the CPPA as a matter of law.

In any event, according to the FAC's own allegations, the Judd & Weiler website's "Online Application" explicitly discloses that the "charges displayed . . . are estimates" and "do not include costs associated with utilities, such as electricity, gas, water/sewer, and/or trash." *See* FAC ¶ 22 (screenshot indicating, in the upper right corner, that it is part of the Judd & Weiler "Online Application" process and making those disclosures). Accordingly, contrary to its legal conclusions elsewhere, the FAC itself shows that explicit disclosures were provided to tenants during the Judd & Weiler "Online Application" process. *Id.*

This stands in stark contrast to the claims asserted in *Hettinger v. Bozzuto Mgmt. Co.*, No. 23-cv-3687, 2025 WL 2029747 (D.D.C. July 21, 2025), upon which JBGS expects Plaintiff to rely heavily. Although the *theory* asserted in *Hettinger*—that a property manager violated the CPPA when it did not disclose certain utility to a tenant at the time of application—is similar, the *facts* are very different. For example, in *Hettinger*, the challenged fee was not disclosed before the application fee was paid, whereas here, Plaintiff's FAC acknowledges she did not pay any application fee at all, and certainly did not do so before receiving any necessary disclosures. *Compare Hettinger*, 2025 WL 2029747, at *7, *with* supra, p. 5. Moreover, the FAC's own screenshot of the Judd & Weiler website acknowledges that the disclosures about utilities and related fees were in fact made as part of the "Online Application" process. FAC ¶ 22. This is fatal to Plaintiff's Disclosure Claim.

B.      The Service Fee Claim Fails Under the CPPA.

Plaintiff's Service Fee Claim, which is premised on her allegation that JBGS violated D.C. Code § 42-3505.10(b-2)(1) by charging her for a utility-related Service Fee, fails to state a claim for relief because the Service Fee Claim rests exclusively on an incorrect construction and application of D.C. law.

As an initial matter, Plaintiff signed both the Lease and the Utility Addendum, in which she expressly agreed to pay for her own electricity usage **and** for a portion of the common area trash and electricity fees **and** for a "Monthly Administrative Billing Fee," *i.e.*, the Service Fee. *See* Ex. A, Utility Addendum, pp. 11-12 (further agreeing that Plaintiff "may be paying for part of the utility usage in common areas," which she agreed is "fair and reasonable").  Given that she expressly agreed to pay the Service Fee, Plaintiff cannot reasonably claim to have been "misled" by them under the CPPA.  *See* FAC ¶ 118; *see also Whiting v. AARP*, 701 F. Supp. 2d 22, 29 (D.D.C. 2010); *Hirlinger*, 2024 WL 2941630, at *6.

Nor can Plaintiff's Service Fee Claim be squared with the D.C. Housing Code provision upon which it is predicated.  Plaintiff alleges that JBGS violated the CPPA because, under the D.C. Housing Code, such fees are "required . . . to maintain a unit" consistent with habitability, and thus owners are required to pay for them, not tenants.  FAC ¶¶ 66–78.  But that proposition is not supported by the D.C. Housing Code, and absent a viable predicate violation, Plaintiff has not plausibly pled an "unlawful trade practice" under the CPPA.

*First*, Plaintiff pleads that the Service Fee appears on statements generated by a third-party submetering company, alongside charges for in-unit utility usage and common area charges.  FAC ¶¶ 26–27.  But, as the FAC acknowledges and the Lease's Utility Addendum explicitly states, the Service Fee is a payment associated with third-party utility billing, not one charged by a housing provider for "maintain[ing] a unit in a condition consistent with the implied warranty of

25

habitability." D.C. Code § 42-3505.10(b-2)(1). Simply put, based on Plaintiff's own allegations, D.C. Code § 42-3505.10(b-2)(1) is not implicated here by the claimed Service Fee at all, because Plaintiff pleads a third-party billing arrangement, not a housing provider charging a tenant for habitability maintenance. FAC ¶¶ 26–27.

*Second*, and in any event, D.C. Code § 42-3505.10(b-2)(1) is not a utilities-pricing statute; instead, it addresses the physical condition of a unit and ordinary wear and tear. Accordingly, D.C. Code § 42-3505.10(b-2)(1) does not, by its plain language, impose the rule Plaintiff asks the Court to announce, namely that a landlord must pay for utilities or absorb utility-related third-party billing charges. Indeed, as the D.C. Council's Committee report noted, Section 42-3505.10(b-2)(1) is designed to prevent a housing provider from charging a tenant for repairs and maintenance the housing provider is mandated to cover, sometimes without the tenant's knowledge, not to regulate utilities pricing or bar utility-related billing arrangements. *See* Ex. D hereto, Committee on Housing Report on B25-0074, p. 2 (explaining the concern that tenants are charged for repairs that housing providers "are mandated to cover, sometimes without the tenants' knowledge").

Because Plaintiff's "prohibited service fee" theory rests on a strained (and incorrect) interpretation of the RHA and related provisions, Plaintiff has not alleged a plausible predicate violation for CPPA liability. Her Service Fee Claim should therefore be dismissed.

        C.     Plaintiff's Utility/Trash Claim Fail Under the CPPA.

Plaintiff's Utility/Trash Claim alleges that JBGS violated the CPPA by requiring tenants to pay for common area utilities and trash service. FAC ¶¶ 80–90. But, again, the FAC rests on a flawed legal conclusion that District law requires housing providers to bear these costs.

26

i.       *Plaintiff's theory depends on the flawed premise that "furnish" means "furnish for free," which is not a plausible reading of 14 D.C.M.R. § 600.3.*

Plaintiff's Utility/Trash Claim rests on a strained interpretation of 14 D.C.M.R. § 600.3, which was enacted in 1955 and provides that "[w]here a utility (such as water, electricity, gas or other fuels, or sewer or refuse service) is the responsibility of, or under the control of, the owner or licensee of any residential building, the utility shall be furnished and maintained by the owner or licensee in the quantities needed for normal occupancy."  14 D.C.M.R. § 600.3.

Quoting this longstanding statutory provision, Plaintiff asserts that, because utilities and trash service must be "furnished and maintained" by the owner, 14 D.C.M.R. § 600.3 requires housing providers to ***pay for*** those utilities and prohibits passing the associated costs onto tenants. FAC ¶¶ 83–87.  This is the sole basis for Plaintiff's Utility/Trash Claim.  *See id.*  Plaintiff's distorted interpretation of the D.C. Housing Code is wrong for at least four reasons.

*First*, Plaintiff's interpretation of the word "furnish" to mean "free" conflicts with common usage.  The ordinary definition of "furnish" is simply "to provide with what is needed," and doesn't reference payment or cost at all.  *See Furnish*, MerriamWebster.com, https://www.merriam-webster.com/dictionary/furnish (last visited Feb. 17, 2026).

*Second*, Plaintiff's interpretation is belied by other provisions of D.C. law that clearly state when items must be "furnish[ed] without charge."  *See*, *e.g.*, D.C. Code § 38-701 (titled "Textbooks and supplies furnished without charge"); D.C. Code § 34-922 (titled "Certified copy . . . to be furnished without cost"); D.C. Code § 34-2413.11 [Repealed] (titled "Potomac water to be furnished to charitable institutions without charge").  If the D.C. Council wished to require housing providers to pay for utilities, it could have required them to do so "without charge."  It did not here.  *See Mann v. Bahi*, 251 F. Supp. 3d at 124 ("To interpret two statutes in a manner that would render one nonsensical or superfluous would be inappropriate.").

27

*Third*, the language and context of 14 D.C.M.R. § 600.3 make clear that that provision is intended to require landlords to ensure that tenants have a habitable living environment. D.C. Mun. Regs. tit. 14, § 600.3. Specifically, Section 600.3 provides that the referenced utilities must be furnished "**in the quantities needed for normal occupancy**"—which would make no sense if it were intended to require landlords to pay for those services. *Id.* For example, if read in the manner suggested by Plaintiff, landlords could charge tenants for common utilities so long as they were in excess of the normal quantities. Moreover, the other provisions of Chapter 14-6 (including those surrounding Section 600.3) focus exclusively on habitability concerns—not the apportionment of costs. *See* D.C. Mun. Regs. tit. 14 §§ 600.2 & 600.4 (requiring facilities to be "in a safe and good working condition"); *see also* D.C. Mun. Regs. tit. 14 § 601 (describing basic plumbing facilities, including, for example, requiring units to contain a kitchen sink); D.C. Mun. Regs. tit. 14 § 602 (rules regarding shared bathrooms, including allowable ratio).

*Fourth*, D.C.'s Office of the Attorney General recently issued a consumer alert confirming that landlords may properly charge tenants common area utility fees, further underscoring that D.C.M.R. § 600.3 does not mean what Plaintiff says. *See* Ex. E, *Attorney General Schwalb Issues Alert to Help Tenants Understand How Utilities Are Billed & Make Sure They Are Not Overpaying*, *available at* https://oag.dc.gov/release/attorney-general-schwalb-issues-alert-help-tenants (May 16, 2025) (the "OAG Alert") (noting that "[t]here is no law or regulation" that dictates the . . . formula that a landlord or third-party utility billing company must use," and that some "may also charge tenants for common area utility use, such as common area HVAC charges or common area water charges.").

The Supreme Court has long held that an attorney general's interpretations of state or district law "are entitled to careful consideration by the courts' and quite generally regarded as

highly persuasive". *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 87 (1975); *see also Little v. Dominion Transmission, Inc.* 138 F.Supp. 3d 699, 706 (W.D. Va. 2015) ("[t]hough the Attorney General's opinion is not binding authority, it is persuasive and entitled to considerable weight in matters of statutory construction.")  Here too, the D.C. Office of Attorney General's guidance should be "entitled to considerable weight."  This is especially true here where the matter concerns statutory construction, and the D.C. Attorney General's interpretation comports with the plain reading of the regulation and other provisions of D.C. law.

With no case law support for Plaintiff's novel interpretation, liberal construction does not mean creating new cost-apportionment regulation out of whole cloth, particularly where Plaintiff's reading runs contrary to the plain language of a statute that has been unchanged for 70 years and never once been found to require the apportionment Plaintiff now claims.  Because Plaintiff's CPPA theory for her Utility/Trash Claim is built entirely on this strained legal premise, Plaintiff's Utility/Trash Claim fails as a matter of law.

       *ii.*      *Plaintiff's interpretation cannot be squared with other provisions of D.C. law that contemplate billing tenants for utilities and related charges.*

Plaintiff's proposed interpretation of 14 D.C.M.R. § 600.3—that it effectively forbids landlords from charging tenants for trash or utilities—also runs contrary to other provisions of the D.C. Code.  For example, D.C. Code § 34-2202.16 states that a property owners pay the "stormwater user fee," but specifies that "[a] landlord shall not pass a stormwater user fee charge to a tenant" in excess of a prescribed amount, which expressly contemplates ***some*** pass-through to tenants.  Under Plaintiff's interpretation, however, these kinds of fees cannot be passed on to tenants and instead must be "furnished" solely at the landlord's expense.  This makes no sense, and Plaintiff's reading of 14 D.C.M.R. § 600.3 cannot be squared with D.C. Code § 34-2202.16.

29

Plaintiff's construction also conflicts with statutes that expressly contemplate tenant billing for utilities, including submetering. *See* D.C. Code § 34-1553(b)(1) (providing that if submetering or allocation equipment is used, the building owner "shall bill the tenant" unless the lease provides otherwise); *see also* D.C. Code § 42-3302(a) (addressing billing arrangements in apartment houses, suggesting tenants could be billed). As these examples show, landlords have long charged tenants for their utility usage, including in common areas; indeed, this is the only way utilities can be provided in buildings where units are not separately metered. *See* D.C. Code § 42-3301 *et seq.* (master-metered apartment buildings).

In short, Plaintiff's interpretation takes a single word in a statutory scheme—"furnish"—and extends it to infinity and beyond, without regard for either custom or common sense. It would, practically speaking, alter the terms of thousands of leases in the District. No court has yet adopted Plaintiff's reading. This Court should not be the first to do so. Because Plaintiff's Utility/Tash Claim rests exclusively on an incorrect construction of District law, and because Plaintiff does not plausibly allege a misleading practice separate and apart from that legal theory, Plaintiff's Utility/Trash Claim fails to state a claim under the CPPA.

D.    The Fee Provision Claim Fails Under the CPPA.

As discussed above, Plaintiff's Fee Provision Claim—essentially alleging that the Fee Provision violates 14 D.C.M.R. § 304.4—fails because the Fee Provision, by its terms, does not violate that provision of the Housing Code. *See supra*, Section I.B. Instead, and as noted, the Fee Provision merely confirms what 14 D.C.M.R. § 304.4 expressly permits: that Plaintiff will "reimburse" JBGS "for all court costs" that JBGS incurs "***as awarded by the court***." FAC ¶ 96; Ex. A, Additional Special Provisions Addendum (emphasis added); *see also* 14 D.C.M.R. § 304.4 (permitting a court to "assess[] court or legal fees against a tenant in appropriate circumstances").

30

Thus, far from falsely representing that JBGS has any rights or remedies that it does not have under D.C. law, the Fee Provisions are entirely consistent with D.C. law. Accordingly, by placing the Fee Provision in the Lease, JBGS did not make an erroneous representation of the parties' rights, remedies, or obligations, and thus did not violate the CPPA as a matter of law. FAC ¶ 100; D.C. Code § 28-3904 (e-1). Plaintiff's Fee Provision Claim should therefore be dismissed, with prejudice, as a matter of law.

### E.    The Indemnity Provisions Claim Fails Under the CPPA.

Plaintiff's Indemnity Provisions Claim similarly fails for the reasons noted above. *See supra*, Section I.B. Initially, the Indemnity Provisions at issue do not violate 14 D.C.M.R. § 304.3 because D.C. law requires "clear" and "mutual intention of the parties" to exculpate a party from its own negligence; ambiguity in any form does not suffice. *Supra*, pp., 14–15.

Here, the Indemnity Provisions nowhere clearly and unambiguously require Plaintiff or other tenants to indemnify JBGS for its own negligence. *See generally* Lease, Ex. A. Far from it, JBGS provided Plaintiff with a copy of the D.C. Tenant's Bill of Rights, which Plaintiff signed, acknowledging that JBGS could not "waive[] [] landlord liability for failing to properly maintain the property." Ex. A, D.C. Tenant's Bill of Rights (p. 42), § 1 & *id.* at p. 47 (Signature Certification, line 29). And the Community Policies, Rules and Regulations Addendum in the Lease similarly makes clear that one of the Indemnity Provisions on which Plaintiff relies is only "enforceable **to the fullest extent of the law**." Exhibit A, p. 21 (Community Policies Addendum), § I (emphasis added); *see also* FAC ¶ 92 (citing that provision).[3]

---

[3]    For whatever reason, Plaintiff's FAC omits the final line from the quoted text of this indemnity provision that appears in the Lease's Community Policies, Rules and Regulations Addendum. *Compare* FAC ¶ 92 (omitting any reference to the provision being "enforceable to the fullest extent of the law"), *with* Exhibit A, p. 21 (Community Policies Addendum), § I (including that language).

As a matter of D.C. law, then, the Indemnity Provisions do **not** obligate Plaintiff to indemnify JBGS for its own negligence. *See supra*, Section I.B; *see also District of Columbia v. Royal*, 465 A.2d 367, 368-9 (D.C. 1983) ("[I]n order to permit an indemnitee to recover for his own negligence, the reviewing court must be firmly convinced that such an interpretation reflects the intention of the parties" as evidenced by the agreed-to "contractual language").

Accordingly, by placing the Indemnity Provisions in the Lease, JBGS did not make an erroneous representation of the parties' rights, remedies, or obligations, and thus did not violate the CPPA as a matter of law. FAC ¶ 105; D.C. Code § 28-3904(e-1). Like her Fee Provision Claim, Plaintiff's Indemnity Provisions Claim should be dismissed, with prejudice.

## CONCLUSION

For the reasons set forth herein, JBGS respectfully requests that the Court grant its Motion and dismiss the FAC in its entirety, with prejudice, or in the alternative, stay the proceeding pending a determination from the Rent Administrator.

Dated: March 20, 2026

Respectfully submitted,

*/s/ Benjamin E. Horowitz*
Benjamin E. Horowitz (Bar No. 1017262)
Brian D. Koosed (Bar No. 1034733)
Emma C. Davis (Bar No. 90016173)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
(202) 344-4494 (Tel.)
(202) 344-8300 (Fax)
BEHorowitz@Venable.com
BDKoosed@Venable.com
ECDavis@Venable.com

*Attorneys for Defendant*

32